**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN BENSCOTER, individually and as representative of a class of similarly situated individuals, | : : : : : | |
| Plaintiff, | : : | No.  22-cv-1142 |
| v. | : : | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff, John Benscoter, individually and on behalf of all other persons similarly situated, by counsel, alleges the following for his class action complaint against the Defendant Nationwide Mutual Insurance Company:

**<u>INTRODUCTION</u>**

1. Plaintiff and each member of the putative class he seeks to represent are insureds covered by an auto insurance policy issued by defendant Nationwide Mutual Insurance Company (hereinafter "Nationwide") in Pennsylvania and in accordance with Pennsylvania law which provide medical benefit coverage in the event that an insured suffers injuries as a result of a motor vehicle accident.

2. Plaintiff suffered injuries as a result of a motor vehicle accident which occurred on April 13, 2018.

3. Similarly, members of the putative class were injured in motor vehicle accidents and sought medical benefits under their automobile policies issued by the defendant

4. Nationwide did not pay properly Plaintiff's and putative class members' medical billing for those injuries caused by the motor vehicle accident.

5. Instead, Nationwide required Plaintiff and putative class members to submit to a physical and/or mental exam based on an illegal policy condition and without showing good cause to a Court and without Court Order directing Plaintiff to submit to an insurance physical exam.

6. Plaintiff believes, and therefore avers, that the total outstanding billing resulting from Defendant's denial of Plaintiff's first-party medical benefits based upon the results of Defendant's improperly procured medical examination is $720.00.

7. As a consequence, the Plaintiff and the putative class members are entitled to judgment ordering Defendant to pay the medical billing which Nationwide has not paid based on its demand which was premised upon an illegal policy condition and to recover from the Defendant their damages and other such other and further relief as this Court may deem just and proper.

## **PARTIES**

8. Plaintiff, John Benscoter, is an adult individual, sui juris.

9. Defendant Nationwide Mutual Insurance Company (hereinafter "NMIC" or "Nationwide") is a corporation duly authorized and licensed to issue insurance policies and regularly conducts business in the Commonwealth of Pennsylvania generally and in Pike County specifically.

10. Nationwide Mutual Insurance Company is the entity which issued the policy to John Benscoter.

11. Additionally, Nationwide Mutual Insurance Company is also the owner, parent, and/or ultimate controlling entity of the following direct and indirect affiliated and subsidiary insurance companies it managed, directed and controlled, each of which at all times material herein was (1) licensed to write and issue auto coverage policies in Pennsylvania; and (2) did actually write and issue auto coverage polices in Pennsylvania that contained insuring covenants which provided first party medical benefits under the laws of the Commonwealth of Pennsylvania that were identical or substantially the same as the policies issued by NMIC:

    (a)  Nationwide Agribusiness Ins Co (NAIC Code 28223)
    (b)  Nationwide Assur Co  (NAIC Company Code 10723)
    (c)  Nationwide Gen Ins Co  (NAIC Company Code 23760)
    (d)  Nationwide Ins Co Of Amer  (NAIC Company Code 25453)
    (e)  Nationwide Ins Co Of Florida  (NAIC Company Code 10948)
    (f)  Nationwide Mut Fire Ins Co  (NAIC Company Code 23779)
    (g)  Nationwide Affinity Ins. Co. of America (NAIC Company Code 26093)
    (h)  Nationwide Prop. & Cas. Ins. Co. (NAIC Company Code 37877)

(The companies listed in (a) through (h) above are
collectively referred to herein as "Nationwide Affiliates")

12. NMIC further is the owner, parent, and/or ultimate
controlling entity of the following direct and indirect
affiliated and subsidiary insurance companies that do not employ
the name "Nationwide" in its trade name, but which it managed,
directed and controlled, each of which at all times material
herein was (1) licensed to write and issue auto coverage policies
in Pennsylvania; and, on information and belief (2) did actually
write and issue auto coverage polices in Pennsylvania that
contained insuring covenants which provided first party medical
benefits under the laws of the Commonwealth of Pennsylvania that
were identical or substantially the same as the policies issued
by NMIC:

    (a)  Allied Ins Co of Amer  (NAIC Company Code 10127)
    (b)  Harleysville Ins Co  (NAIC Company Code 23582)
    (c)  Harleysville Ins Co Of NJ  (NAIC Company Code 42900)
    (d)  Harleysville Ins Co of NY  (NAIC Company Code 10674)
    (e)  Harleysville Preferred Ins Co  (NAIC 35696)
    (f)  Harleysville Worcester Ins Co  (NAIC Code 26182)
    (g)  Victoria Fire & Cas Co  (NAIC Company Code 42889)
    (h)  Victoria Select Ins Co  (NAIC Company Code 10105)

(The companies listed in (a) through (h) above are
collectively referred to herein as "Other Nationwide
Affiliates")

13. Accordingly, as used in this Complaint:

(a) Defendant "Nationwide Mutual Insurance Company" or
"NMIC" means and includes:

    1.  Nationwide Affinity Ins. Co. of America;
    2.  Nationwide Agribusiness Ins. Co.;

```
3.    Nationwide Assur. Co.;
4.    Nationwide Gen Ins. Co.;
5.    Nationwide Ins Co. of America.
6.    Nationwide Ins Co of Florida;
7.    Nationwide Mut Fire Ins. Co.;
8.    Nationwide Mut Insurance Company;
9.    Nationwide Prop. & Cas. Ins. Co.;
10.   Allied Ins Co of America;
11.   Harleysville Ins. Co.;
12.   Harleysville Ins. Co. of NJ;
13.   Harleysville Ins. Co. of NY;
14.   Harleysville Preferred Ins. Co.;
15.   Harleysville Worcester Ins. Co.;
16.   Victoria Fire & Cas Co.; and
17.   Victoria Select Ins Co (NAIC Company Code 10105)
```

(b) Unless context indicated otherwise, "Defendant" or "Defendants" means and includes Nationwide Mutual Insurance Company, as defined above.

14. Defendant Nationwide Mutual Insurance Company employs the adjusters that adjust claims for benefits made pursuant to policies underwritten by Nationwide Mutual Insurance Company and Nationwide affiliates and subsidiaries.

15. Moreover, the "Nationwide Affiliates" and the "Other Nationwide Affiliates" regularly and routinely hold themselves out as Nationwide or Nationwide Insurance.

16. No matter which Nationwide affiliated company underwrites an auto policy, the benefits are paid by "Nationwide Insurance" without reference to any Nationwide affiliated companies.

17. Upon information and belief, even when a Nationwide affiliate underwrites a specific policy, benefits are paid from the same "Nationwide Insurance" account with JPMorgan Chase Bank, N.A.

18. Upon information and belief, even when a Nationwide affiliate underwrites a specific policy, premiums are deposited into the same "Nationwide Insurance" account with JPMorgan Chase Bank, N.A.

19. Nationwide Mutual Insurance Company counts all liabilities and assets of every Nationwide affiliated company as its own.

20. All conduct of every Nationwide affiliated company is controlled by Nationwide Mutual Insurance Company.

21. The Nationwide Affiliates and Other Nationwide Affiliates can act only as authorized by Nationwide Mutual Insurance Company.

22. All conduct and activities of every Nationwide affiliated company are controlled by Nationwide Mutual Insurance Company.

23. Nationwide Affiliated companies only act as directed and authorized by Nationwide Mutual Insurance Company.

24. All marketing and sales of "Nationwide" insurance products, including those ultimately underwritten and issued by the Nationwide Affiliates, as well as the Other Nationwide Affiliates, are conducted and controlled exclusively by Defendant Nationwide Mutual Insurance Company.

25. All Nationwide auto insurance policies are drafted by Nationwide Mutual Insurance Company and are required to use the forms directed by Nationwide Mutual Insurance Company.

26. The Nationwide affiliated companies act as an "alter ego" of Nationwide Mutual Insurance Company such that Nationwide Mutual Insurance Company domination and control renders the

Nationwide affiliated subsidiaries mere instrumentalities of Nationwide Mutual Insurance Company.

27. Nationwide Mutual Insurance Company exercises substantial control over the daily operations of Nationwide affiliated companies such that the Nationwide affiliated companies are and appear as a mere department of Nationwide Mutual Insurance Company.

28. Accordingly, Defendant Nationwide Mutual Insurance Company, as well as the Nationwide Affiliates and Other Nationwide Affiliates, all identify, all hold themselves out as and operate under the common identity and tradename and trade dress of "Nationwide" or "Nationwide Insurance."

29. At all time relevant hereto, Defendant Nationwide Mutual Insurance Company exercised, and continues to exercise, complete dominion and ultimate control over the Nationwide Affiliates and Other Nationwide Affiliates.

30. In fact, Nationwide Mutual Insurance Company itself refers to itself as the "Controlling Entity" with regard to its affiliates and subsidiaries.

31. At all time relevant hereto, Defendant Nationwide Mutual Insurance Company directed, and continues to direct, the actions of the Nationwide Affiliates and Other Nationwide Affiliates.

32. At all time relevant hereto, Defendant Nationwide Mutual Insurance Company created and executed a policy permitting it, the Nationwide Affiliates, and the Other Nationwide Affiliates, to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exams to a court, to refuse benefits even absent any lack of compliance with a court order,

to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam.

33. At all time relevant hereto, Defendant Nationwide Mutual Insurance Company adopted and implemented the policy permitting it, the Nationwide Affiliates, and the Other Nationwide Affiliates, to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exams to a court, to refuse benefits even absent any lack of compliance with a court order, to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam.

34. At all time relevant hereto, Defendant Nationwide Mutual Insurance Company directed to utilize its policies and procedures permitting it, the Nationwide Affiliates, and the Other Nationwide Affiliates, to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exams to a court, and to refuse benefits even absent any lack of compliance with a court order, to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam.

## **FACTUAL BACKGROUND**

35. At all times relevant hereto, Plaintiff, John Benscoter, was insured under a policy of auto insurance issued by defendant Nationwide in and under the laws of the Commonwealth of Pennsylvania.

36. Plaintiff John Benscoter was involved in a motor vehicle accident within the Commonwealth of Pennsylvania in which he sustained numerous physical injuries.

37. Plaintiff John Benscoter was treated by medical providers for the injuries which he sustained in the motor vehicle accident.

38. However, instead of paying Plaintiff's first-party medical benefits, on or about 10/11/2019 and 11/11/2019, through its authorized agent Prime Network, Nationwide required that Plaintiff submit to a medical examination based on an illegal policy condition which required injured persons to submit to examinations by company-selected physicians as often as the company reasonably requires and also in violation of the lawfully required process as prescribed by 75 Pa.C.S. § 1796.

39. In addition to the notices from Nationwide's authorized agent, Prime Network, Plaintiff was also advised by Nationwide itself that he was required to attend the PIP medical exam at Nationwide's demand  as a condition to receiving auto medical benefits through his policy.

40. Defendant affirmatively misinformed the Plaintiff that he was legally required to submit to insurance physical exams unilaterally commanded by Defendant.

41. Defendant told Plaintiff that he was legally required to submit to insurance physical exams unilaterally commanded by Defendant as a condition to receiving auto medical benefits.

42. In accordance with Nationwide's demands aforesaid, Plaintiff did attend the medical exam.

43. The medical exam which Nationwide demanded Plaintiff attend was illegal and illegally procured. As the exam was illegal and illegally procured, the medical opinion which Nationwide derived from exam was similarly illegally obtained and is improper and illegal itself.

44. Nationwide did not demonstrate "good cause" to a Court in order to secure a Court Order compelling John Benscoter's submission to a physical examination.

45. Nationwide did not demonstrate "good cause" to any court.

46. In fact, Nationwide did not even petition any court to compel the physical examination of Plaintiff.

47. Consequently, there was no Court Order based on good cause directing Plaintiff to submit to a physical exam.

48. Further, the medical exam was conducted by a unilaterally-hired expert selected and paid by Nationwide instead of by an independent doctor selected by the Court pursuant to the procedure mandated by 75 Pa.C.S. § 1796(a).

49. Further, the medical exam was conducted on terms and conditions set by Nationwide and not on terms and conditions fairly and independently set by a neutral court pursuant to the procedure mandated by 75 Pa.C.S. § 1796(a).

50. Nationwide's conduct to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exams to a court, and to refuse benefits even absent any lack of compliance with a court order, to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam is a company-wide policy and procedure for Nationwide and for all of the affiliates and subsidiaries it controls who issues auto policies in Pennsylvania.

51. Nationwide's conduct to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exams to a court, to refuse benefits even absent any lack of compliance with a court order, to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam, is authorized, approved, directed and required by company management for Nationwide Mutual Insurance Company itself and for all of defendant's affiliates and subsidiaries who issue policies in Pennsylvania.

52. Nationwide's conduct to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exams to a court, and to refuse benefits even absent any lack of compliance with a court order is part of a plan to avoid paying medical benefits to its insureds with the goal and purpose of reducing the amount that Defendant had to pay in benefits.

53. Accordingly, as set forth below, by improperly requiring that Plaintiff attend a medical exam with examiners selected by the defendant premised upon purported policy requirements and then denying benefits based upon the results of the illegal medical exam, Defendant violated Pennsylvania law and breached the insurance agreement with Plaintiff.

54. Because Nationwide's conduct to require an exam illegally based on an illegal policy provision was unlawful, and was not done in accordance with law and the lawfully required procedure, the exam Nationwide derived from that illegal conduct is null, void, invalid, and illegal.

55. On December 27, 2019, Nationwide terminated Plaintiff's auto medical benefits effective January 10, 2020 based on the results of the medical exam that Nationwide required Plaintiff to submit to. The illegally-procured medical exam that was done based on an illegal requirement and that was done in violation of law and the lawfully required procedure was the basis and reasoning upon which Nationwide based its denial of Plaintiff's medical billing.

56. But for Nationwide's illegal procurance of the medical exam in violation of 75 Pa.C.S. § 1796, the examination conducted by Nationwide's unilaterally-selected expert witness would never have occurred.

57. Because the exam was both illegal itself and illegally procured and conducted in illegal fashion, the results of that

exam are void.

58. Because Nationwide's medical exam was procured illegally, under false pretenses, and based on an illegal policy provision, any application or use of the results of the exam to deny Plaintiff benefits is null, void, invalid and a breach of the terms of the insurance policy requiring the payment of first-party benefits.

59. Despite demand, the Defendant refused to pay benefits in accordance with its obligations under the subject policy of insurance and in accordance with Pennsylvania law.

60. The General Assembly enacted 75 Pa.C.S. § 1796 to ensure that a court determine if there is actually good cause for a medical exam. Further, the General Assembly required that the medical exam be conducted fairly, independently and justly by an objective doctor who was independently appointed by a neutral court and upon terms and limitations also independently set by a neutral judge.

61. Nationwide's conduct to secure a medical exam illegally, under false pretenses and based on an illegal policy provision — in which Nationwide unilaterally secured an exam by a hired expert whom Nationwide selected and paid for on terms set solely by Nationwide — violates every aspect of 75 Pa.C.S. § 1796 mandating how a medical exam is to be secured and conducted in order for the insurer to obtain a fair, honest, and independent medical determination.

62. Evidence and opinions procured through violation of 75 Pa.C.S. § 1796's express procedures to ensure that good cause is shown for an exam, that an independent doctor be appointed by a neutral court and that the terms and conditions be independently set by a neutral court before benefits can be denied, cannot form the basis of an insurer's denial of an insured's benefits.

63. Nationwide's hired medical opinion, gained by Nationwide's own wrongful and illegal conduct, cannot be used by Nationwide for its own benefit and advantage.

64. There must be some penalty and responsibility for illegal conduct. Absent such responsibility for violations of law, insurers could illegally require medical exam and then benefit by illegal and false conduct.

65. Unless the exam which Nationwide secured illegally, under false pretenses and based on an illegal policy provision is voided, Nationwide would actually benefit by its illegal and false conduct by being able to deny first-party benefits it was legally obligated to pay based on an exam it was never lawfully authorized to conduct.

66. Without the medical exam that Nationwide secured illegally, under false pretenses, and based on an illegal policy provision, Nationwide would have had no basis to deny Plaintiff's first-party benefits and would have been obligated to continue paying Plaintiff's benefits.

67. Accordingly, because the medical examination itself was procured in violation of 75 Pa.C.S. § 1796, Defendant's actions in subsequently denying Plaintiff's benefits based upon the results of the improperly procured medical examination in-and-of-itself was improper, violated Pennsylvania law requiring the prompt payment of first-party benefits, and constituted a breach of the terms of the insurance policy requiring the payment of first-party benefits.

68. As a result of Defendant's conduct, Plaintiff suffered harm in that he owes money for medical billing which defendant refused to pay and suffers the ongoing and cumulative loss of benefits.

69. As a result of Defendant's conduct, Plaintiff suffered harm in that he was denied or lost access to medical care and suffers the ongoing and cumulative loss of benefits.

70. Defendant, through its aforementioned conduct, actively and systemically refused payment of medical billing owing to or on behalf of its insureds and to its subsidiaries and affiliates who issue auto policies in Pennsylvania.

71. Defendant Nationwide's actions were pursuant to a common policy and practice with respect to the Plaintiff and as to all other putative class members insured by Nationwide Mutual Insurance Company and insured by all of its subsidiaries and affiliates who issue auto policies in Pennsylvania.

72. As a result of Defendant's aforementioned conduct, Plaintiff, individually and as class representative for all similarly situated individuals, suffered harm in that they owe money for medical billing which defendant refused to pay and suffers the ongoing and cumulative loss of benefits.

73. As a result of Defendant's aforementioned conduct, Plaintiff, individually and as class representative for all similarly situated individuals, suffered harm in that they were denied or lost access to medical care and suffer the ongoing and cumulative loss of benefits.

74. Defendant's actions as aforesaid were done purposefully, deliberately, intentionally, willfully, wantonly and/or recklessly with the consent and approval of Nationwide's management for Nationwide Mutual Insurance Company itself and for all of defendant's affiliates and subsidiaries who issue policies in Pennsylvania.

75. Plaintiffs seek class wide determinations of liability and punitive damages to be shared by the Class on behalf of all others similarly situated.

### STATUTORY PROVISIONS

76. The present matter arises under Pennsylvania Motor Vehicle Financial Responsibility Law 75 P.A.C.S.A. § 1796 (hereinafter PMVFRL).

77. Pennsylvania Motor Vehicle Financial Responsibility Law 75 P.A.C.S.A. § 1796 provides in relevant part as follows:

**§ 1796. Mental or physical examination of person.**

(a) General rule.--Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

78. Pursuant to Pennsylvania Motor Vehicle Financial Responsibility Law §1796, whenever the physical condition is material to any claim for medical benefits, a Court of competent jurisdiction may order a person to submit to a physical examination. That Order may only be made for good cause shown and the benefits may be denied only if the person fails to comply with that Court Order.

79. As a result of its actions, Defendant Nationwide violated 75 P.A.C.S.A. § 1796 in that:

a) Nationwide did not demonstrate "good cause" to a Court in order to secure a Court Order compelling John Benscoter' submission to a physical examination;

b) Nationwide did not demonstrate "good cause" to any court at all;

c) Nationwide did not petition a court at all to compel the physical examination of John Benscoter;

d)   As a consequence, there was no Court order based
     on good cause directing Plaintiffs to submit to a
     physical exam;

e)   As a consequence, there was no court order
     directing Plaintiff to submit to a physical exam
     at all;

f)   Nationwide denied Plaintiff's benefits as a result
     of its unlawful physical exam of Plaintiff

80. Nationwide's actions to unilaterally command physical

exams of insureds, to not demonstrate good cause for physical

exam to a court, to refuse benefits even absent any lack of

compliance with a court order to select the examiners itself

instead of having an independent court select the examiner and to

itself set the terms of the exam are in violation of the law.


## CLASS ACTION ALLEGATIONS

### A.   DEFINITION OF THE CLASS

81. Plaintiff, and the other similarly situated individuals,

constitute a class within the meaning of Fed. R. Civ. P. 23.

82. Plaintiff brings this action individually and as a class

action pursuant to Fed. R. Civ. P. 23, on behalf of themselves

and members of class and subclasses similarly situated.

83. The Classes are defined herein as follows:

a.   All persons who suffered harm and damages as a result
     of defendant's illegal actions relative to medical
     exams of insureds in violation of law

b.   All persons injured in motor vehicle accidents and
     insured under Pennsylvania auto insurance policies
     issued by defendant which provided for medical
     benefits coverage whom defendant required or

    directed to submit to insurance physical exams
    without Court order directing insured to submit to
    physical exams.

    c.   All persons injured in motor vehicle accidents and
         insured under Pennsylvania auto insurance policies
         issued by defendant which provided for medical
         benefits coverage whom defendant required or
         directed to submit to insurance physical exams
         without Court order directing insured to submit to
         physical exams and as to whom Nationwide did not
         pay benefits based on the persons failure to
         attend the physical exam.

    d.   All persons injured in motor vehicle accidents and
         insured under Pennsylvania auto insurance policies
         issued by defendant which provided for medical
         benefits coverage whom Nationwide subjected to
         Nationwide's aforestated procedure and as to whom
         Nationwide did not then pay medical benefits.

**B.   NUMEROSITY**

     84. The Class is so numerous as to render joinder of all

members impracticable. The identities of a majority of the Class

members are presently unknown but are ascertainable through

appropriate discovery. Members of the Class may be identified

from records maintained by Defendants and may be notified of the

pendency of this action by mail, or the internet or publication

using the form of notice similar to that customarily used in

class actions.

**C.   TYPICALITY**

     85. Plaintiffs' claims are typical of the claims of other

members of the Class. All such claims arise out of the

Defendant's same wrongful course of conduct in violation of the

same statute. Plaintiff and the proposed Class members have

suffered a common injury arising out of the Defendant's common

course of conduct as alleged herein.

**D.    EXISTENCE AND PREDOMINANCE OF COMMON ISSUES**

86. Common questions of law and fact are applicable to all members of the Class and predominate over any questions that might solely affect individual members of the class.

87. The common questions of law and fact arise from and concern the following facts, actions and issues:

a.    all Class members are insured through automobile insurance policies issued by the defendant under and subject to the laws of the Commonwealth of Pennsylvania;

b.    all class members sought medical benefits under the automobile policies issued by the defendant;

c.    the defendant unilaterally directed all members of the class to submit to physical examination without any Court order requiring the Plaintiffs to submit to physical exams;

d.    the defendant coerced class members to attend the improper medical exam either by refusing to pay benefits until the class member attended the improper medical exam or by threatening to deny the class member's benefits.

e.    the defendant subsequently denied payment of class members' medical billing, either for their failure to attend the improper medical exam or as a result of the findings of the improper medical exam

f.    the Defendant's actions as to all members of the class are alleged to have violated the same law (75 P.A.C.S.A. §1796); and

g.    the Defendant violated 75 P.A.C.S.A. §1796

through its practices and procedures of demanding
physical exams without Court Order and refusing
benefits where there is no lack of compliance with
any Court Order.

88. The questions of law and fact common to the members of
the Class, as above noted, predominate over any questions
affecting only individual members, and thus, this class action is
superior to other available methods for the fair and efficient
adjudication of this controversy.

**E.    SUPERIORITY**

89. A class action is superior to other available methods
for a fair and efficient adjudication of this controversy because
individual joinder of all members of the Class is impractical.
Furthermore, damages suffered by members of the Class may be
relatively small when compared to the expense and burden of
individual litigation, which would make it difficult or
impossible for individual members of the Class to obtain relief.
The interests of judicial economy favor adjudicating the claims
of the Class on a classwide basis rather than an individual
basis. There will be no difficulty in the management of this
action as a class action.

**F.    ADEQUATE REPRESENTATION**

90. Plaintiff will fairly and adequately protect and
represent the interests of the Class and have no interest
antagonistic to, or in conflict with, those of other Class

members.

91. Plaintiff is willing and prepared to serve the proposed Class in a representative capacity with all the obligations and duties material herein.

92. Plaintiff has the time and resources to prosecute this action and has retained qualified counsel who have had experience in matters involving the rights of insureds and both state and federal court litigation. Plaintiff intends to prosecute this action for the benefit of the Class.

**G. RISKS OF INCONSISTENT OR VARYING ADJUDICATION**

93. Class treatment is proper in this proceeding in order to avoid inconsistent or varying adjudications with respect to individual Class members. Separate actions by individual members of the Class would create a risk that adjudication of disputed issues of law or fact as to some of the former non-bargaining unit employees would be binding upon other Class members not parties to the adjudication, or would otherwise substantially impair or impede their ability to protect their interests.

94. The Class meets all the requirements for class certification as prescribed by the Federal Rules of Civil Procedure.

**COUNT I**
**(Declaratory Judgment)**

95. Plaintiff, John Benscoter, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

96. Pennsylvania Motor Vehicle Financial Responsibility Law § 1796 provides in relevant part that whenever the physical condition is material to any claim for medical benefits, a Court of competent jurisdiction may order a person to submit to a physical examination, that the Order may only be made for good cause shown, and that the benefits may be denied only if the person fails to comply with that Court Order.

97. Defendant Nationwide Insurance violated 75 Pa.C.S.A. § 1796 in that:

a)   Nationwide did not demonstrate "good cause" to a Court in order to secure a Court Order compelling Benscoter's submission to a physical examination;

b)   Nationwide did not demonstrate "good cause" to any court at all;

c)   Nationwide did not petition a court at all to compel the physical examination of John Benscoter;

d)   As a consequence, there was no Court order based on good cause directing Plaintiffs to submit to a physical exam;

e)   As a consequence, there was no court order directing Plaintiff to submit to a physical exam at all;

f)   As a consequence, Plaintiffs had not failed to comply with any court order to submit to physical

examination;

g)    Nationwide also refused to pay medical benefits
      until the improper insurance physical exam was
      consummated even though there was no court order
      compelling Plaintiffs to submit to insurance
      physical exams or lack compliance with court
      orders to submit insurance physical exams.

98. Nationwide's actions to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exam to a court, to refuse benefits even absent any lack of compliance with a court order to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam are in violation of the law.

99. Accordingly, Plaintiff, John Benscoter, individually and on behalf of a Class of Similarly Situated Persons, is entitled to a Declaratory Judgment declaring that Nationwide Mutual Insurance Company itself, and all of the Nationwide affiliates and subsidiaries under its control who write auto policies in Pennsylvania:

a)    Nationwide must comply with Pennsylvania Motor Vehicle
      Financial Responsibility Law 75 P.A.C.S.A. § 1796;

b)    That whenever the mental or physical condition of an
      insured is material to any claim for medical benefits,
      Nationwide must Motion a Court of competent
      jurisdiction for an Order directing the insured to
      submit to a mental or physical examination;

c)    That any such motion must be for good cause shown;

d)    That only if a person fails to comply with an order by
      the Court to be examined, that the Court may order that
      the person be denied benefits until compliance.

e)   That Nationwide be prohibited from enforcing, or
     attempting to enforce, any policy terms which state, or
     purport to authorize, Nationwide to demand Plaintiff to
     attend a physical exam without having demonstrated good
     cause to a court and without having secured a Court
     Order compelling Plaintiff's attendance at a physical
     exam;

f)   That Nationwide is legally liable for the damages
     caused by defendant's improper actions relative to
     medical exams of insureds in violation of law;

g)   Along with all other relief requested throughout the
     Complaint.

## COUNT II
### (Injunctive Relief)

100. Plaintiff, John Benscoter, individually and on behalf
of a Class of Similarly Situated Persons, repeats and re-alleges
the allegations of the preceding paragraphs as if fully restated
herein.

101. Pennsylvania Motor Vehicle Financial Responsibility Law
§ 1796 provides in relevant part that whenever the physical
condition is material to any claim for medical benefits, a Court
of competent jurisdiction may order a person to submit to a
physical examination, that the Order may only be made for good
cause shown, and that the benefits may be denied only if the
person fails to comply with that Court Order.

102. Defendant Nationwide Insurance violated 75 Pa.C.S.A. §
1796 in that:

a)   Nationwide did not demonstrate "good cause" to a
     Court in order to secure a Court Order compelling
     Benscoter's submission to a physical examination;

b)   Nationwide did not demonstrate "good cause" to any
     court at all;

c) Nationwide did not petition a court at all to compel the physical examination of John Benscoter;

d) As a consequence, there was no Court order based on good cause directing Plaintiffs to submit to a physical exam;

e) As a consequence, there was no court order directing Plaintiff to submit to a physical exam at all;

f) As a consequence, Plaintiffs had not failed to comply with any court order to submit to physical examination;

g) Nationwide also refused to pay medical benefits until the improper insurance physical exam was consummated even though there was no court order compelling Plaintiffs to submit to insurance physical exams or lack compliance with court orders to submit insurance physical exams.

103. Nationwide's actions to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exam to a court, to refuse benefits even absent any lack of compliance with a court order to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam are in violation of the law.

104. Plaintiff, and the class he seeks to represent, has a reasonable probability of success on the merits in this action.

105. Plaintiff, and the class he seeks to represent, will suffer irreparable harm if injunctive relief is denied.

106. Granting the requested injunctive relief will not cause greater harm to Defendant, as Defendant is required to comply with Pennsylvania law in any event.

107. Granting the injunction will serve the public interest in that Defendant will be required to comply with Pennsylvania law, which benefits its insureds and the public in general.

108. Without the requested injunctive relief, Plaintiff and the class he seeks to represent will likely suffer future injury from Defendant's conduct in that they will continue to be subject to Defendant's demands to submit to a medical examination without court order and subject to Defendant's denials of medical benefits based upon the results of the medical exams.

109. Accordingly, Plaintiff, John Benscoter, individually and on behalf of a Class of Similarly Situated Persons, is entitled to the following injunctive relief:

a)  That Nationwide remove from all of its Pennsylvania automobile policies any policy terms which state, or purport to authorize, Nationwide to demand Plaintiff to attend a physical exam without having demonstrated good cause to a court and without having secured a Court Order compelling Plaintiff's attendance at a physical exam;

b)  That Nationwide notify all of its Pennsylvania automobile insureds that its policy terms which state, or purport to authorize, Nationwide to demand Plaintiff to attend a physical exam without having demonstrated good cause to a court and without having secured a Court Order compelling Plaintiff's attendance at a physical exam are void and unlawful.

c)  That Nationwide notify all of its Pennsylvania automobile insureds of the Pennsylvania Supreme Court's decision in *Sayles v. Allstate Ins. Co.*;

d)  That Nationwide notify all of its Pennsylvania automobile insureds of Justice Baer's concurring opinion in *Sayles v. Allstate Ins. Co.*, specifically wherein he states that there is an "unsettling trend among automobile insurance companies to attempt to circumvent clear statutory language through contrary

policy provisions" and that "the insurance industry should be more circumspect when it is tempted to 'adjust' provisions of the MVFRL to its benefit notwithstanding contrary statutory provisions.";

e)    That Nationwide notify all of its Pennsylvania automobile insureds that it attempted to, and in many cases actually did, circumvent clear statutory language by enforcing its IME policy provision in order to deny its own insureds the benefits for which they pay;

f)    That Nationwide notify all of its Pennsylvania automobile insureds that it gave into its temptation to unilaterally "adjust" the provisions of the Pennsylvania MVFRL, enacted to protect its insureds, by inserting into its policy the IME provision, designed solely to benefit itself at the expense of its insureds, and enforcing said provision against its insureds;

g)    That Nationwide notify all of its Pennsylvania automobile insureds that its IME policy provision violated Pennsylvania law and was false and deceiving;

h)    That Nationwide notify all of its Pennsylvania automobile insureds that it knew its IME policy provision violated the plain language of Pennsylvania law, but demanded its insureds submit to medical exams anyway;

**COUNT III**
**(Violation of 75 Pa.C.S.A. § 1796)**

110. Plaintiff, John Benscoter, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

111. Pennsylvania Motor Vehicle Financial Responsibility Law §1796 provides in relevant part that whenever the physical condition is material to any claim for medical benefits, a Court of competent jurisdiction may order a person to submit to a physical examination, that the Order may only be made for good

cause shown, and that the benefits may be denied only if the person fails to comply with that Court Order.

112. Rather than comply with Pennsylvania law, Nationwide required Plaintiff to submit to a physical exam, conducted on Nationwide's terms and conditions by a unilaterally-hired expert selected and paid by Nationwide, without showing good cause to a Court and without a Court Order.

113. Accordingly, Defendant Nationwide Insurance violated 75 Pa.C.S.A. § 1796 in that:

    a)    Nationwide did not demonstrate "good cause" to a Court in order to secure a Court Order compelling Benscoter's submission to a physical examination;

    b)    Nationwide did not demonstrate "good cause" to any court at all;

    c)    Nationwide did not petition a court at all to compel the physical examination of John Benscoter;

    d)    As a consequence, there was no Court order based on good cause directing Plaintiffs to submit to a physical exam;

    e)    As a consequence, there was no court order directing Plaintiff to submit to a physical exam at all;

    f)    Nationwide denied Plaintiff's benefits as a result of its unlawful physical exam of Plaintiff

114. Nationwide's actions to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exam to a court, to refuse benefits even absent any lack of compliance with a court order to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam are in violation of the law.

115. As Nationwide's conduct to require an exam illegally based on an illegal policy provision and was not done in accordance with law and the lawfully required procedure, the exam Nationwide derived from that illegal conduct is null, void, invalid, and illegal.

116. Nationwide denied Plaintiff benefits based on the results of the medical exam that Nationwide required Plaintiff to submit to. The illegally-procured medical exam that was done based on an illegal requirement and that was done in violation of law and the lawfully required procedure was the basis and reasoning upon which Nationwide based its denial of Plaintiff's medical billing.

117. But for Nationwide's illegal procurance of the medical exam in violation of 75 Pa.C.S. § 1796, the examination conducted by Nationwide's unilaterally-selected expert witness would never had occurred.

118. Because the exam was both illegally procured and conducted in illegal fashion, the results of that exam are void.

119. Because Nationwide's medical exam was procured illegally, under false pretenses, and based on an illegal policy provision and was not done in accordance with law any application or use of the results of the exam is null, void, invalid and illegal.

120. The General Assembly enacted 75 Pa.C.S. § 1796 to ensure that a court determine if there is actually good cause for

a medical exam. Further, the General Assembly required that the medical exam be conducted fairly, independently and justly by an objective doctor who was independently appointed by a neutral court and upon terms and limitations also independently set by a neutral judge.

121. Nationwide's conduct to secure a medical exam illegally, under false pretenses and based on an illegal policy provision — in which Nationwide unilaterally secured an exam by a hired expert whom Nationwide selected and paid for on terms set solely by Nationwide — violates every aspect of 75 Pa.C.S. § 1796 mandating how a medical exam is to be secured and conducted in order for the insurer to obtain a fair, honest, and independent medical determination.

122. Evidence and opinions procured through violation of 75 Pa.C.S. § 1796's express procedures to ensure that good cause is shown for an exam, that an independent doctor be appointed by a neutral court and that the terms and conditions be independently set by a neutral court before benefits can be denied, cannot form the basis of an insurer's denial of an insured's benefits.

123. Nationwide's hired medical opinion, gained by Nationwide's own wrongful and illegal conduct, cannot be used by Nationwide for its own benefit and advantage.

124. There must be some penalty and responsibility for illegal conduct. Absent such responsibility for violations of law, insurers could illegally require medical exam and then

benefit by illegal and false conduct.

125. Unless the exam which Nationwide secured illegally, under false pretenses and based on an illegal policy provision is voided, Nationwide would actually benefit by its illegal and false conduct by being able to deny first-party benefits it was legally obligated to pay based on an exam it was never lawfully authorized to conduct.

126. Without the medical exam that Nationwide secured illegally, under false pretenses, and based on an illegal policy provision, Nationwide would have had no basis to deny Plaintiff's first-party benefits and would have been obligated to continue paying Plaintiff's benefits.

127. Accordingly, because the medical examination itself was procured in violation of 75 Pa.C.S. § 1796, Defendant's actions in subsequently denying Plaintiff's benefits based upon the results of the improperly procured medical examination in-and-of-itself was improper and violated Pennsylvania law requiring the provision of first-party benefits and the prompt payment of those benefits.

128. As a result of Defendant's conduct, Plaintiff and each of the putative class members suffered harm in that they owe money for medical billing which Defendant refused to pay and suffer the ongoing and cumulative loss of benefits.

129. As a result of defendant's conduct, Plaintiff and each of the putative class members suffered harm in that they were

delayed in or denied access to medical care and suffer the ongoing and cumulative loss of benefits.

130. Nationwide is responsible to pay for the medical benefits it denied to Plaintiff and each of the putative class members based on the medical exam it illegally and improperly secured.

## COUNT IV
## (Breach of Contract)

131. Plaintiff, John Benscoter, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

132. That at all times relevant hereto, the Plaintiff and each of the putative class members had a motor vehicle insurance policy with Defendant that contractually obligated Defendant to provide PIP medical benefits to Plaintiff and the putative class members for injuries sustained in motor vehicle accidents.

133. That the policy of insurance issued by the Defendant to the Plaintiff and putative class members was to provide medical coverage to the Plaintiff and putative class members in the event that the Plaintiff and putative class members suffered injury as a result of an auto accident.

134. That Plaintiff and putative class members suffered damages, incurred medical costs and sustained injuries that necessitated medical treatment as a result of an auto accident.

135. That the defendant, in accordance with its obligations

under the aforesaid policy and in accordance with Pennsylvania law, was obligated to provide medical benefits to the Plaintiff and putative class members.

136. Pennsylvania Motor Vehicle Financial Responsibility Law §1796 provides in relevant part that whenever the physical condition is material to any claim for medical benefits, a Court of competent jurisdiction may order a person to submit to a physical examination, that the Order may only be made for good cause shown, and that the benefits may be denied only if the person fails to comply with that Court Order.

137. Rather than comply with Pennsylvania law, Nationwide required Plaintiff and putative class members to submit to a physical exam, conducted on Nationwide's terms and conditions by a unilaterally-hired expert selected and paid by Nationwide, without showing good cause to a Court and without a Court Order.

138. Accordingly, Defendant Nationwide Insurance violated 75 Pa.C.S.A. § 1796 in that:

a) Nationwide did not demonstrate "good cause" to a Court in order to secure a Court Order compelling Plaintiff's and putative class members' submission to a physical examination;

b) Nationwide did not demonstrate "good cause" to any court at all;

c) Nationwide did not petition a court at all to compel the physical examination of Plaintiff and putative class members;

d) As a consequence, there was no Court order based on good cause directing Plaintiff or the putative class members to submit to a physical exam;

e)    As a consequence, there was no court order directing Plaintiff or putative class members to submit to a physical exam at all;

f)    Nationwide denied Plaintiff's and putative class members' benefits as a result of its unlawful physical exam of Plaintiff.

139. Accordingly, as set forth below, by improperly requiring that Plaintiff and putative class members to attend a medical exam with examiners selected by the defendant premised upon purported policy requirements and then denying benefits based upon the results of the illegal medical exam, Defendant breached the insurance agreement with Plaintiff and putative class members.

140. As Nationwide's conduct to require an exam illegally based on an illegal policy provision and was not done in accordance with law and the lawfully required procedure, the exam Nationwide derived from that illegal conduct is null, void, invalid, and illegal.

141. Nationwide denied Plaintiff benefits based on the results of the medical exam that Nationwide required Plaintiff to submit to. The illegally-procured medical exam that was done based on an illegal requirement and that was done in violation of law and the lawfully required procedure was the basis and reasoning upon which Nationwide based its denial of Plaintiff's medical billing.

142. But for Nationwide's illegal procurance of the medical exam in violation of 75 Pa.C.S. § 1796, the examination conducted

by Nationwide's unilaterally-selected expert witness would never have occurred.

143. Because the exam was both illegally procured and conducted in illegal fashion, the results of that exam are void.

144. Because Nationwide's medical exam was procured illegally, under false pretenses, and based on an illegal policy provision and was not done in accordance with law any application or use of the results of the exam to deny Plaintiff and putative class members benefits is null, void, invalid and a breach of the terms of the insurance policy requiring the payment of first-party benefits.

145. Despite demand, the Defendant refused to pay benefits in accordance with its obligations under the policies of insurance and in accordance with Pennsylvania law.

146. The General Assembly enacted 75 Pa.C.S. § 1796 to ensure that a court determine if there is actually good cause for a medical exam. Further, the General Assembly required that the medical exam be conducted fairly, independently and justly by an objective doctor who was independently appointed by a neutral court and upon terms and limitations also independently set by a neutral judge.

147. Nationwide's conduct to secure a medical exam illegally, under false pretenses and based on an illegal policy provision — in which Nationwide unilaterally secured an exam by a hired expert whom Nationwide selected and paid for on terms set

solely by Nationwide — violates every aspect of 75 Pa.C.S. § 1796 mandating how a medical exam is to be secured and conducted in order for the insurer to obtain a fair, honest, and independent medical determination.

148. Evidence and opinions procured through violation of 75 Pa.C.S. § 1796's express procedures to ensure that good cause is shown for an exam, that an independent doctor be appointed by a neutral court and that the terms and conditions be independently set by a neutral court before benefits can be denied, cannot form the basis of an insurer's denial of an insured's benefits.

149. Nationwide's hired medical opinion, gained by Nationwide's own wrongful and illegal conduct, cannot be used by Nationwide for its own benefit and advantage.

150. There must be some penalty and responsibility for illegal conduct. Absent such responsibility for violations of law, insurers could illegally require medical exam and then benefit by illegal and false conduct.

151. Unless the exam which Nationwide secured illegally, under false pretenses and based on an illegal policy provision is voided, Nationwide would actually benefit by its illegal and false conduct by being able to deny first-party benefits it was legally obligated to pay based on an exam it was never lawfully authorized to conduct.

152. Without the medical exam that Nationwide secured illegally, under false pretenses, and based on an illegal policy

provision, Nationwide would have had no basis to deny Plaintiff's and putative class members' first-party benefits and would have been obligated to continue paying Plaintiff's and putative class members' benefits.

153. Accordingly, because the medical examination itself was procured in violation of 75 Pa.C.S. § 1796, Defendant's actions in subsequently denying Plaintiff's and putative class members' benefits based upon the results of the improperly procured medical examination in-and-of-itself was improper and violated a breach of the terms of the insurance policy requiring the payment of first-party benefits.

154. That as a result of the defendant's breach, the Plaintiff and putative class members suffered losses including, but not limited to, unpaid medical billing and the ongoing and cumulative loss of benefits.

155. As a result of Defendant's conduct, Plaintiff and putative class members suffered harm in that he was denied payment for medical care and the ongoing and cumulative loss of benefits.

**COUNT V**
**CLAIMS FOR VIOLATIONS OF**
**PENNSYLVANIA'S INSURANCE BAD FAITH ACT – 42 Pa.C.S. §8371**

156. Plaintiff, John Benscoter, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

157. Defendant accepted premiums from its insureds and is thus responsible to comply with the law governing medical benefits in Pennsylvania.

158. Defendant, as an insurer, was required to process claims in good faith and in accordance with law.

159. Defendant, by its agents, servants, and/or employees acting within the scope of their employment and/or authority, acted with willful, intentional, gross, and/or reckless disregard for the injury and risk of economic loss inflicted upon Plaintiff and Class members.

160. Defendant, by its agents, servants, and/or employees acting as aforesaid within the scope of their employment and/or authority, acted in bad faith by refusing to accord proper benefits to the Plaintiff and Class members in conformance with law.

161. More specifically, the defendant acted in bad faith by committing the acts set forth herein and enumerated below, with each act constituting its own bad faith violation and cause of action in its own right:

a) Defendant affirmatively and systematically required John Benscoter and the other insureds to submit to physical exams at the unilateral direction of Nationwide, even without a showing of good cause to a Court and without Court order directing Plaintiffs to submit to insurance physical exams;

b) Defendant affirmatively and systemically required John Benscoter and the other insureds to attend exam as a condition to receiving auto medical benefits even though there was no court order compelling Plaintiff to submit to an insurance physical exam or lack compliance with a court order to submit an insurance physical exam;

c) Defendant's actions to unilaterally command of physical exams of insureds and to not demonstrate good cause for physical exam to a court;

d) Defendant's actions to refuse to pay benefits until the unlawful physical exam was completed, even though there was no court order compelling Plaintiff to submit to an insurance physical exam or lack compliance with a court order to submit an insurance physical exam.

e) Defendant's actions to select the examiners itself instead of having an examiner appointed by an independent court;

f) Defendant's actions to set the terms and conditions of the exam itself instead of having the terms and condition set by an independent court.

162. The Defendant's actions to unilaterally command physical exams of insureds, to not demonstrate good cause for physical exam to a court, to refuse benefits even absent any lack of compliance with a court order to select the examiners itself instead of having an independent court select the examiner and to itself set the terms of the exam  is part of a systemic plan to avoid paying medical benefits to its insureds with the goal and purpose of reducing the amount that Defendant had to pay in

benefits for its own gain and advantage.

163. That Nationwide's actions were done purposefully and intentionally in an effort to deny insureds knowledge of their rights under the law so as to render the prospect of securing lawful benefits or challenging the defendant's commands more difficult, more burdensome, and less attractive relative to physical exam determinations generally and the physical exam determination at hand specifically.

164. That the Defendant's actions as set forth herein violated the Pennsylvania Unfair Insurance Practices Act 40 Pa.C.S.A. section 1171.5(a)(1)(i), which provides in relevant part that it is unlawful to:

(i) Misrepresent the benefits, advantages, conditions, or terms of any insurance policy;

165. That the defendant's actions as set forth herein violated the Pennsylvania Unfair Insurance Practices Act 40 Pa.C.S.A. section 1171.5(a)(10)(i), which provides in relevant part that it is unlawful to:

(i) Misrepresent pertinent facts or policy or contract provisions relating to coverages at issue.

166. That the defendant's actions as set forth herein violated 31 Pennsylvania Administrative Code section 146.4(a) which makes it unlawful for:

An insurer, "may not fail to fully disclose to first party claimants pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented.

167. The defendant has acted contrary to the law as

aforesaid against not only the plaintiff, John Benscoter, but also against other persons in the Commonwealth of Pennsylvania contrary to the policy and the dictates of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq*.

168. As a direct and proximate result of Defendant's actions, Plaintiff and members of the Class have suffered injury and loss

including the ongoing and cumulative loss of benefits.

169. Further, additional Bad Faith conduct by the defendant arises from its ongoing conduct in continuing to deny benefits based on its illegal exam even after the Pennsylvania Supreme Court's decision in *Sayles v Allstate*. In that regard, the following dates apply:

**IME Related Dates v Sayles Decision**

11/11/2019 -  PrIME sends to Benscoter a Notice scheduling Nationwide's medical exam for 11/21/2019

11/20/2019 - The Pennsylvania Supreme Court's decision in *Sayles v Allstate* is released

11/21/2019 - The medical exam of Benscoter is performed. The medical exam report was received by Nationwide between November 21 and December 27, 2019.

12/27/2019 - Nationwide letter terminating medical benefits effective January 10, 2020 based on IME report.

161. Despite the Pennsylvania Supreme Court's decision in

*Sayles* back on November 20, 2020, Nationwide still continues to deny Benscoter's auto medical benefits to date.

170. Accordingly, Nationwide continue to purposefully deny auto medical benefits to its insured despite knowing for more than 1 year and 7 months now that it violated the law in securing the unlawful medical exam upon which it relies to deny benefits.

## RELIEF REQUESTED

171. Plaintiff, John Benscoter, individually and on behalf of a Class of Similarly Situated Persons, repeats and re-alleges the allegations of the preceding paragraphs as if fully restated herein.

WHEREFORE, Plaintiff, John Benscoter, respectfully requests that this Court enter an Order:

A. Determining that this action is a proper class action, certifying the named Plaintiffs as class representatives for the classes alleged herein and Plaintiffs' counsel as Class Counsel;

B. Awarding judgment as to Count I in favor of named Plaintiff that Defendants' conduct was a violation of Pennsylvania Motor Vehicle Financial Responsibility Law 75 P.A.C.S.A. §1796 and declaring that:

    1)    Nationwide must comply with Pennsylvania Motor Vehicle Financial Responsibility Law 75 P.A.C.S.A. § 1796;

    2)    That whenever the mental or physical condition of an insured is material to any claim for medical benefits, Nationwide must Motion a Court of competent jurisdiction for an Order directing the insured to submit to a mental or physical examination;

3)    That any such motion must be for good cause shown;

4)    That only if a person fails to comply with an order by the Court to be examined, that the Court may order that the person be denied benefits until compliance.

5)    That Nationwide be prohibited from enforcing, or attempting to enforce, any policy terms which state, or purport to authorize, Nationwide to demand Plaintiff to attend a physical exam without having demonstrated good cause to a court and without having secured a Court Order compelling Plaintiff's attendance at a physical exam;

6)    That Nationwide is legally liable for the damages caused by defendant's improper actions relative to medical exams of insureds in violation of law

C. Awarding judgment and/or relief as to Count II in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant:

a)    That Nationwide remove from all of its Pennsylvania automobile policies any policy terms which state, or purport to authorize, Nationwide to demand Plaintiff to attend a physical exam without having demonstrated good cause to a court and without having secured a Court Order compelling Plaintiff's attendance at a physical exam;

b)    That Nationwide notify all of its Pennsylvania automobile insureds that its policy terms which state, or purport to authorize, Nationwide to demand Plaintiff to attend a physical exam without having demonstrated good cause to a court and without having secured a Court Order compelling Plaintiff's attendance at a physical exam are void and unlawful.

c)    That Nationwide notify all of its Pennsylvania automobile insureds of the Pennsylvania Supreme Court's decision in *Sayles v. Allstate Ins. Co.*;

d)    That Nationwide notify all of its Pennsylvania automobile insureds of Justice Baer's concurring opinion in *Sayles v. Allstate Ins. Co.*, specifically wherein he states that there is an "unsettling trend among automobile insurance companies to attempt to

circumvent clear statutory language through contrary policy provisions" and that "the insurance industry should be more circumspect when it is tempted to 'adjust' provisions of the MVFRL to its benefit notwithstanding contrary statutory provisions.";

e)  That Nationwide notify all of its Pennsylvania automobile insureds that it attempted to, and in many cases actually did, circumvent clear statutory language by enforcing its IME policy provision in order to deny its own insureds the benefits for which they pay;

f)  That Nationwide notify all of its Pennsylvania automobile insureds that it gave into its temptation to unilaterally "adjust" the provisions of the Pennsylvania MVFRL, enacted to protect its insureds, by inserting into its policy the IME provision, designed solely to benefit itself at the expense of its insureds, and enforcing said provision against its insureds;

g)  That Nationwide notify all of its Pennsylvania automobile insureds that its IME policy provision violated Pennsylvania law and was false and deceiving;

h)  That Nationwide notify all of its Pennsylvania automobile insureds that it knew its IME policy provision violated the plain language of Pennsylvania law, but demanded its insureds submit to medical exams anyway;

D. Awarding judgment as to Count III in favor of named

Plaintiff and each Other Similarly Situated Individual and

against Defendant for:

1.  An amount which represents the sum of all medical payments which the Defendant did not pay as to the Plaintiff and each member of the class;

2.  Interest at the rate of 12% on the outstanding billing;

3.  Trebled damages;

4.  Attorneys fees;

5.  Along with all other relief requested throughout the Complaint.

E. Awarding judgment as to Count IV in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant for:

1. An amount which represents the sum of all medical payments which the Defendant did not pay as to the Plaintiff and each member of the class;

2. Interest at the rate of 12% on the outstanding billing;

3. Costs;

4. Attorneys fees.

5. Along with all other relief requested throughout the Complaint.

F. Awarding judgment as to Count V in favor of named Plaintiff and each Other Similarly Situated Individual and against Defendant for:

a. Any and all damages proximately caused by Defendant's bad faith acts and omissions;

b. Interest on the amount of Plaintiff's claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%;

c. An award of punitive damages against the defendant; and

d. Court costs and Insured Plaintiff and Insured Class members' reasonable attorney fees against the insurer.

G. Such other and further relief as the Court may deem just and proper.

H. All other relief requested throughout the Complaint.

Respectfully submitted,


BY:  /s/ Charles Kannebecker
     Charles Kannebecker, Esq.
     Law Office of Charles Kannebecker
     104 W. High St.
     Milford, PA 18337

     *Attorneys for Plaintiff*