## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN BENSCOTER,

      Plaintiff,

    v.

NATIONWIDE MUTUAL
INSURANCE COMPANY,

      Defendant.

No. 4:22-CV-01142

(Chief Judge Brann)

## MEMORANDUM OPINION

### AUGUST 22, 2023

In 2019, Plaintiff John Benscoter, insured through an auto insurance policy issued by Defendant Nationwide Mutual Insurance Company, was involved in a motor vehicle accident in which he suffered injuries. Benscoter received, and Nationwide paid for, treatment for those injuries until, after eighteen months, Nationwide required Benscoter to attend an Independent Medical Examination ("IME") to determine whether further treatment was reasonable. Relying on the results from that IME, Nationwide determined that Benscoter had recovered from the accident and informed him that he was no longer entitled to medical benefits.

However, between the time Nationwide requested the IME and Benscoter attended it, the Supreme Court of Pennsylvania held contractual provisions requiring IMEs to be void. Benscoter filed suit, bringing several claims alleging that

Nationwide improperly denied him benefits based on an IME it had no right to compel.

Before the Court are the parties' cross-motions for summary judgment, in which Nationwide argues that Benscoter failed to allege he was entitled to further benefits and Benscoter argues Nationwide cannot cut his benefits based on an improperly procured IME. Though the majority of Benscoter's claims are improperly pled or untimely, there exists a dispute of material fact as to whether Benscoter was improperly denied benefits. Therefore, Nationwide's Motion is granted in part and Benscoter's Motion is denied.

## I.     BACKGROUND

### A.     Undisputed Facts

Benscoter, who at all relevant times held an auto insurance policy issued by Nationwide, was involved in a motor vehicle accident on April 13, 2018 in which he sustained injuries to his neck, lower back, right knee, and head.[1] He subsequently received medical treatment for those injuries.[2] After paying for Benscoter's medical treatment for a year and a half, Nationwide decided that Benscoter should undergo an IME to determine whether he had recovered to his pre-accident status.[3]  On October 8, 2019, Nationwide advised Benscoter that "given [the] time since [the

---

[1]   Doc. 26 ¶ 2; Doc. 36-3 at 129, 152; Doc. 38 ¶¶ 1, 3; Doc. 44 ¶¶ 1, 3.
[2]   Doc. 38 ¶ 4; Doc. 44 ¶ 4.
[3]   Doc 36-3 at 85; Doc. 38 ¶ 7; Doc. 44 ¶ 7.

accident, Nationwide] will be having someone reach out to him to schedule an exam by an independent doctor . . . [as] part of his policy agreement."[4] The IME was conducted on November 21, 2019 by a physician selected by Nationwide.[5] In the IME report, the examining physician found that, though "there is ongoing left shoulder pain due to calcific tendinitis," the "calcific tendinitis is not causally related to the motor vehicle accident" and concluded that Benscoter "has fully recovered from his motor vehicle injuries [and] returned to pre-accident status."[6] Based on the findings of the examining physician, Nationwide terminated Benscoter's medical benefits effective January 10, 2020.[7]

Meanwhile, on November 20, 2019, the day before Benscoter's IME, the Pennsylvania Supreme Court issued its opinion in *Sayles v. Allstate*, holding that "an automobile insurance policy provision, which requires an insured seeking first-party medical benefits under the policy to submit to an independent medical exam whenever the insurer requires and with a doctor selected by the insurer" conflicts with 75 Pa. C.S. § 1796(a) of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") and is void as against public policy.[8] Benscoter's policy contained such a provision: "The **Insured** will . . . if injured, submit to

---

[4]  Doc. 36-3 at 84.

[5]  Doc. 36-3 at 151; Doc. 38 ¶ 12; Doc. 44 ¶ 12.

[6]  Doc. 36-3 at 158-59.

[7]  Doc. 38 ¶ 17; Doc. 44 ¶ 17.

[8]  *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110, 1110 (Pa. 2019).

examinations by company-selected physicians as often as **the company** reasonably requires."[9]  The policy also contains a provision that states: "Any terms of this policy which may be in conflict with the statutes of the state in which the policy is issued are hereby amended to conform."[10]

On December 27, 2019, Nationwide discussed the findings of the IME with Benscoter and advised him that Nationwide would pay for his treatment through January 10, 2020.[11] On February 11, 2020, Benscoter informed Nationwide that he was going to continue with his current course of physical medicine and rehabilitation treatment and Nationwide reminded him that, due to the IME, it would no longer cover this treatment but that it may consider referrals for different types of treatment.[12] Nationwide further advised Benscoter that any non-covered medical expenses would need to go through his health insurance carrier.[13]

In late April 2020, Sandra Kisailus, an attorney representing Benscoter (not affiliated with Benscoter's counsel here), requested Benscoter's policy documents, which Nationwide sent on May 15, 2020.[14] Two months later, Kisailus requested that Nationwide keep Benscoter's claim open and said that she needed to follow up

---

[9]   Doc. 36-3 at 32 (emphasis in original).
[10]  *Id.*
[11]  *Id.* at 81.
[12]  *Id.* at 79.
[13]  *Id.* at 78
[14]  *Id.* at 77-8.

with Benscoter to obtain an update regarding his ongoing treatment.[15] No update would be forthcoming—despite monthly calls from Nationwide—until December 3, 2020, when Kisailus informed Nationwide that her lack of response was due to a lack of response from Benscoter to her own calls until that day.[16] Kisailus told Nationwide that Benscoter had continued to follow up with his primary care physician, had plans to see a pain management doctor, and that he believed his ongoing treatment to be related to his April 2018 accident.[17] Nationwide reaffirmed that, while his follow-up care with his primary care physician was not covered, it would be willing to consider a whether care by a pain management doctor would fall within the IME.[18]  In April 2021, a representative from Kisailus' office confirmed that Benscoter was continuing to receive treatment and that he had not started any new treatment.[19]   Between January 2020 and April 2021, Nationwide advised medical providers providing treatment to Benscoter of the IME and denied bills submitted on that basis.[20]

---

[15]   *Id.* at 75.
[16]   *Id.* at 72-75.
[17]   *Id.* at 72.
[18]   *Id.*
[19]   *Id.* at 71.
[20]   *See id.* at 72-79.

**B.     Procedural History**

Benscoter initiated this lawsuit on June 17, 2022 and filed the operative Amended Complaint on February 2, 2023.[21] In his Amended Complaint, Benscoter, on behalf of himself and a class of those similarly situated, requests a declaratory judgment regarding insureds' rights with respect the disputed contractual obligation that they undergo a medical examination; equitable relief requiring Nationwide to, among other things, update all of its Pennsylvania policies in light of the *Sayles* decision; the repayment of certain medical benefits; attorneys' fees; treble damages; and punitive damages.[22]

Nationwide moved to dismiss the Amended Complaint.[23] Benscoter moved for partial summary judgment on his claims brought under 75 Pa. C.S. § 1796.[24] In support of his motion, Benscoter attached a copy of his policy, a claims log, and records of the IME, which is the extent of the factual record before the Court.[25] During a status conference with the Court, the parties consented to converting Nationwide's motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d) and the Court treating the parties as having

---

[21]  Docs. 1-1 and 26.
[22]  Doc. 26 ¶¶ 95-99, 130, 155, 171(B)-(E).
[23]  Nationwide Mot. to Dismiss, Doc. 29.
[24]  Mot. for Summ. J., Doc. 36.
[25]  Doc. 36-3.

cross-moved for summary judgment.[26] Both motions are now fully briefed and ripe for disposition.

## II.   LAW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As expressed by the Supreme Court of the United States in *Celotex Corp. v. Catrett*, summary judgment is required where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" on an issue that the "party will bear the burden of proof at trial."[27] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[28]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[29] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because

---

[26]   Doc. 42.
[27]   *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986).
[28]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[29]   *Celotex Corp.*, 477 U.S. at 323.

they may reasonably be resolved in favor of either party."[30] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[31] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[32]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[33] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[34] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[35] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[36]

---

[30]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[31]  *Betts v. New Castle Youth Dev. Ctr*, 621 F.3d 249, 252 (3d Cir. 2010).

[32]  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).

[33]  *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[34]  *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[35]  Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[36]  Fed. R. Civ. P. 56(c)(3).

"'This standard does not change when the issue is presented in the context of cross-motions for summary judgment.'"[37] "When both parties move for summary judgment, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'"[38]

## III.    CLAIMS FOR RELEIF

In his Amended Complaint, Benscoter brings claims for relief (1) under Section 1796 of the Pennsylvania MVFRL (Count III), (2) breach of contract (Count IV), and (3) under 42 Pa. C.S. § 8371 for denial of insurance benefits in bad faith (Count V).[39] Benscoter also requests a declaratory judgment (Count I) and injunctive relief (Count II) relating to Nationwide's alleged violations of and obligations under Section 1796.[40] Because a party may only seek a declaratory judgment or injunctive relief in connection with a substantive claim, the Court will treat Counts I and II as requested relief under Count III as appropriate.[41]

---

[37] *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v City of Phila*, 826 F.2d 214, 216 (3d. Cir. 1987)).

[38] *Id.* (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

[39] Am. Compl. ¶¶ 110-70.

[40] *Id.* ¶¶ 95-109.

[41] *See Tripicchio v. UPS Store, Inc.*, 2023 WL 3182915, at *6 (D.N.J. Apr. 30 2023) (observing that the Declaratory Judgment Act "is not a standalone source of rights, but a procedural vehicle for litigants to seek a declaration of their rights under some other law") (collecting cases); *In re Shop-Vac Mktg. and Sales Practices Litig.*, 964 F.Supp.2d 355, 365 (M.d.Pa. 2013) (observing that "injunctive relief is a remedy, not a in independent cause of action).

## IV.   ANALYSIS

Nationwide requests summary judgment with respect to all claims.[42] Benscoter requests summary judgment on the "issues" of (1) whether Nationwide was required to comply with Section 1796, (2) whether Nationwide's failure to comply with Section 1796 was a breach of contract which harmed Benscoter, and (3) whether a private cause of action is available under Section 1796.[43] Because Rule 56 does not allow for summary judgment on only a portion of a claim, the court will evaluate Benscoter's motion as having moved for summary judgment with respect to the entirety of his Section 1796 and breach of contract claims.[44]

### A.   Section 1796 of the MVFRL.

"Section 1796(a) requires an insurer who wishes to compel a claimant for first-party medical benefits to undergo an IME to file a petition with a court of competent jurisdiction, and, also, to show good cause for the IME. In addition, any court order for an IME must give the insured 'adequate notice of the time and date of the examination,' as well as 'state the manner, conditions and scope of the examination.'"[45]

---

[42]  *See* Doc. 30.

[43]  *See* Doc. 37.

[44]  *See Avaya, Inc. v. Telecom Labs, Inc.*, 2009 WL 2928929, at *2 (D.N.J. Sept. 9, 2009) ("Third Circuit precedent is clear . . . that nothing in [Rule] 56 can be read to allow partial summary judgment on only one portion of a claim.") (collecting cases).

[45]  *Sayles*, 219 A.3d at 1125 (quoting 75 Pa. C.S. § 1796(a)).

1.      **Declaratory Relief.**

Benscoter requests a judgment declaring:

a) Nationwide must comply with Pennsylvania Motor Vehicle Financial Responsibility Law 75 Pa. C.S. § 1796;

b) That whenever the mental or physical condition of an insured is material to any claim for medical benefits, Nationwide must Motion a Court of competent jurisdiction for an Order directing the insured to submit to a mental or physical examination;

c) That any such motion must be for good cause shown;

d) That only if a person fails to comply with an order by the Court to be examined, that the Court may order that the person be denied benefits until compliance.

e) That Nationwide be prohibited from enforcing, or attempting to enforce, any policy terms which state, or purport to authorize, Nationwide to demand Plaintiff to attend a physical exam without having demonstrated good cause to a court and without having secured a Court Order compelling Plaintiff's attendance at a physical exam;

f) That Nationwide is legally liable for the damages caused by defendant's improper actions relative to medical exams of insureds in violation of law;

g) Along with all other relief requested throughout the Complaint.[46]

"[W]hen a plaintiff seeks *prospective* (forward-looking) relief in the form of an injunction or a declaratory judgment, they must show they are 'likely to suffer *future* injury.'"[47] "The future injury must also be 'imminent,' meaning that it is

---

[46] Am. Compl. ¶ 99.

[47] *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 318 (3d Cir. 2022) (quoting *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)).

'certainly impending' rather than merely 'possible.'"[48] "[A]s a result of the immediacy requirement, 'past exposure to illegal conduct does not in itself show a present case or controversy'" regarding forward looking relief.[49] "In the class action context, th[e] requirement [of certain, immediate injury] must be satisfied by at least one named plaintiff."[50]

Benscoter essentially asks the Court for a declaratory judgment that Nationwide must comply with Section 1796(a). However, Benscoter has not alleged any facts, nor are there any in the record, which indicate that he is likely to suffer any imminent harm from a future violation of Section 1796. Benscoter alleges that he "suffered harm" because Nationwide "refused to pay" for medical expenses resulting in him being "denied . . . access to medical care."[51] The language of the requested declaratory relief—"Nationwide is legally liable for the damages caused by defendant's improper actions"—further underscores the backward-looking nature of the harm at issue.[52] Benscoter's allegations of past injury may be sufficient to establish standing for a claim of damages, but they are insufficient to support a request for declaratory or injunctive relief.[53]

---

[48] *Id.* (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013)).
[49] *McNair*, 672 F.3d at 223 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).
[50] *McNair*, 672 F.3d at 223.
[51] *See* Am. Compl. ¶¶ 68-73.
[52] *Id.* ¶ 99(f).
[53] *Yaw*, 48 F.4th 317-18.

Even if Benscoter did allege future harm, his request for a declaratory judgment would still fail. Paragraph (b) of Benscoter's requested declaration goes beyond the requirements of Section 1796 by placing an affirmative obligation on Nationwide to seek a court order for an IME "whenever the mental or physical condition of an insured is material to any claim for medical benefits."[54] Section 1796 does not require an insurer to seek an IME in *every* case where the mental or physical condition of an insured is material to a claim.[55] There will certainly be cases in which an IME is not appropriate or necessary. Benscoter himself received treatment for eighteen months following his accident without undergoing an IME. Further, as Nationwide argues, there will be cases in which the insured voluntarily complies with the insurers request. Benscoter says any discussion about voluntary compliance is a red herring because he did not voluntarily submit to an IME himself, therefore his claims do not implicate how Section 1796 applies in such cases.[56] Again, the equitable relief Benscoter seeks is forward, not backward, looking. Whether Benscoter voluntarily complied in the past is immaterial to Nationwide's obligations under Section 1796 in the future. Therefore, paragraph (b) of Benscoter's requested declaratory relief goes too far.

---

[54] Am. Compl. ¶ 99(b).

[55] *See Sayles*, 219 A.3d at 1124 ("[I]nsurers are required to follow Section 1796(a) when seeking to compel an insured to submit to an IME [and] when the insured has refused to voluntarily comply with such a request.")

[56] Doc. 34 at 2.

Rewriting the offending language in paragraph (b) would not save Benscoter's request for a declaratory judgment. A declaratory judgment "must be of some practical help to the parties" so that they can "make responsible decisions about the future."[57] As Benscoter has not alleged that he expects Nationwide to request that he submit to a second IME, his requested relief in paragraphs (a)-(e) is no more than a request for an advisory opinion exhorting Nationwide to follow the law, and therefore not ripe for judicial resolution.[58] Further, Benscoter's requested relief in paragraphs (f)-(g)—whether he is entitled to damages or other relief—are duplicative of his other claims and not appropriately resolved through declaratory relief.[59]

### 2.     Damages

Nationwide argues that Benscoter's claims for damages under Section 1796 should be dismissed because the statute does not provide for a cause of action.[60] Benscoter agrees that Section 1796 does not explicitly set forth a private cause of action but argues that an implied right exists "when an insurer violates § 1796 and denies benefits based on the illegally-procured medical exam."[61]

---

[57]   *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 345 (3d Cir. 2001) (citations omitted).

[58]   *Rose v. Bank of America*, 2018 WL 443451, at *2 (D. Mass. Jan. 16, 2018)

[59]   *See Butta v. GEICO Cas. Co.*, 400 F.Supp.3d 225, 234-35 ("Declaratory judgments are not meant simply to proclaim that one party is liable to another.") (quoting *Andela v. Admin. Office of U.S. Courts*, 569 Fed. Appx. 80, 83 (3d. Cir. 2014)).

[60]   Doc. 30 at 8-11.

[61]   Doc. 34 at 9; *see also* Doc. 37 at 4-14.

The Pennsylvania Supreme Court has adopted a three-prong test to determine whether a statute creates a private cause of action: "(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff."[62]

While Benscoter may be one of the class for whose benefit Section 1796 was enacted,[63] this alone is insufficient to find a private cause of action.[64] Analysis of the statute under the second factor, "recognized as the 'central inquiry,'" reveals that no private cause of action exists.[65]

The authority Benscoter cites in support of his argument, *Schappell v. Motorists Mutual Insurance Co.*, underscores the lack of any indication that the General Assembly of Pennsylvania intended to provide for a private cause of action. At issue in *Schappell* was another provision of the MVFRL, Section 1716, which provides for the payment of overdue benefits by insurers to healthcare providers.[66]

---

[62] *Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1189 (Pa. 2007) (citing *Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (1999)).

[63] *See Sayles*, 219 A.3d at 1125 (observing that the Pennsylvania General Assembly enacted Section 1796 to protect insureds from unnecessary inconvenience and invasion of privacy imposed by IMEs required at the unilateral direction of the insurer).

[64] *Solomon v. U.S. Healthcare Sys. of Pennsylvania, Inc.*, 797 A.2d 346, 352-3 (Pa. Super. Ct. 2002).

[65] *Id.* at 353.

[66] *Schappell*, 934 A.2d at 1189.

With regard to Section 1716, the court noted that the statute provides for reasonable attorney's fees if it "is found" that the insurer was found to have acted unreasonably in refusing to pay benefits.[67] The court held that the term "is found" contemplated that a court could make such a finding and award attorney's fees as provided by the statute.[68] Section 1796 contains no such language.

Though Section 1796 does not contemplate any remedy for a failure by an insurer to follow the procedures outlined in the statute, it does contemplate remedies for the failure by an insured to comply with a court order to be examined and for the failure to provide the insured with a copy of an IME report.[69] Further, other sections of the MVFRL explicitly recognize a right to seek a remedy in court.[70] As the legislature included language providing for causes of action and remedies in certain circumstances both in Section 1796 itself and other sections of the MVFRL, it would be improper for this Court to insert that language where it has been excluded.[71]

Benscoter does not fare any better under the third factor. The purpose of Section 1796 is to "balance[] the right of the insurer to obtain needed information

---

[67]  *Id.* at 1190.
[68]  *Id.*
[69]  *See* 75 Pa. C.S. § 1796(a) ("If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance."); § 1796(b) ("Upon failure to promptly provide copies of [IME] reports, the court or the administrator shall prohibit the testimony of the examining physician in any proceeding to recover benefits.").
[70]  *See, e.g.*, 75 Pa. C.S. § 1797(b) (providing right to sue to challenge peer review organization's findings that benefits be denied and specifying awards for enhanced damages, interest, and attorney's fees).
[71]  *Doe v. Franklin Cty.*, 174 A.3d 593, 608 (Pa. 2017) (citing *Fonner v. Shandon, Inc.*, 555 724 A.2d 903, 907 (1999)).

for the payment of first-party medical claims with the right of the insured not to be subject to unwarranted intrusions on his or her privacy by being subject to repeated and unnecessary medical examinations."[72] Benscoter's requested damages—the payment of denied benefits—is not related to the harm the statute was designed to protect against, nor is it consistent with Nationwide's countervailing right to obtain needed health information.

Benscoter argues that Section 1796 must provide for a cause of action because, without one, an insurer could violate the law and the insured would have no remedy. This concern is unfounded, as an insured in Benscoter's situation could file a claim for breach of contract, just as Benscoter himself has done *in this case*.

Courts are bound to interpret the laws as they are written. Absent any indica of an intent to create a private cause of action, courts cannot create one, no matter how desirable it may be as a policy matter. The Court therefore declines Benscoter's invitation to do so here.

### 3.    Injunction.

Count II of Benscoter's Complaint includes a request for injunctive relief requiring Nationwide to update its Pennsylvania auto insurance policies to reflect the *Sayles* decision and to notify insureds of Nationwide's obligations under and alleged violations of Section 1796.[73] In response to Nationwide's argument that

---

[72]    *Sayles*, 219 A.3d at 1124.
[73]    Am. Compl. ¶¶ 100-09.

Count II should be dismissed because a plaintiff can seek injunctive relief as a remedy, not an independent cause of action, Benscoter concedes that he has not moved for an injunction.[74] That alone is sufficient to dismiss Count II.[75] Further, an injunction is a remedy which requires a cause of action.[76] As discussed above, Section 1796 does not provide for a cause of action, so Benscoter cannot seek an injunction under the statute.

For the foregoing reasons, Nationwide's Motion is granted as to Counts I-III.

## B.    Breach of Contract

Benscoter also alleges that Nationwide's failure to follow the procedure outlined in Section 1796 when it compelled him to undergo an IME and then denying benefits based on that IME constitutes a breach of contract.[77]

In its Motion, Nationwide argues that it is entitled to summary judgment because Benscoter "has not alleged a causal connection between the breach (failing to obtain a court order compelling his IME) and the claimed loss (the denial of benefits under his policy)."[78] Benscoter responds that, but for the IME, Nationwide would have continued to pay for his benefits.[79] In reply, Nationwide emphasizes that

---

[74]  Docs. 30 at 14; 34 at 23.

[75]  *See Cook v. General Nutrition Corp.*, 2017 WL 4340664, at *8 (W.D. Pa. Sept. 29, 2017) ("It is well settled that injunctive relief is not a separate type of claim, but rather a form of relief, and as such, should not be designated as a separate count in the Complaint.") (collecting cases).

[76]  *Birdman v. Office of the Governor*, 677 F.3d 167, 172 (3d Cir. 2012).

[77]  Am. Compl. ¶¶ 131-155.

[78]  Doc. 30 at 11.

[79]  *See* Doc. 34 at 13-14.

Benscoter is only entitled to payment of benefits "if the treatment was reasonable, necessary, and causally related to the motor vehicle accident."[80] Nationwide also asserts that Benscoter does not dispute "the results of the IME, or the conclusion that [Benscoter] is no longer entitled to medical benefits."[81]

In his Motion, Benscoter repeats his argument that "but for Nationwide's illegal procurance of the medical exam in violation of § 1796 . . . there was no other basis (and none in the record) to deny benefits and Nationwide would have been required to continue paying [Benscoter's] medical benefits."[82] In response, in addition to its argument that Benscoter has not demonstrated causation, Nationwide also argues that it was not required to comply with Section 1796 at all because Benscoter was not *compelled* to attend an IME.[83] In reply, Benscoter argues that the IME required by Nationwide was exactly of the sort that Section 1796 was enacted to prohibit and therefore cannot be the basis on which to deny benefits. Benscoter also asserts that he was in fact compelled to attend the IME.[84]

The facts required to plead a breach of contract "are simple: there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach."[85] It is not disputed that there was a contract here, but the parties do dispute

---

[80] Doc. 35 at 7.
[81] *Id.* at 8.
[82] Doc. 37 at 14.
[83] Doc. 43 at 6-8, 13-18.
[84] *Id.* at 5-7.
[85] *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).

whether Nationwide breached the contract and, if so, whether Benscoter was harmed by that breach. The Court addresses those issues in turn.

### 1.   Breach.

It is undisputed that Nationwide did not seek the IME pursuant to the procedure set forth in Section 1796,[86] or that a failure to do so to compel an IME may constitute a breach of contract.[87] The question is then whether Benscoter was compelled to attend the IME or if he did so voluntarily. There are insufficient record facts to compel either conclusion at this stage.

In support of their arguments, Benscoter and Nationwide rely on the same conversation between a Nationwide adjuster and Benscoter.[88] Following that conversation, the adjuster noted:

> Called [Benscoter] – confirmed he is going to be getting a test and see a neurologist for some of the pain – that is the current plan – advised of IME – advised given time since loss, we will be having someone reach out to him to schedule an exam by an independent doctor – advised this is part of his policy agreement – he understood – will FWP in about 30 days or sooner if IME results received – he understood – no further questions.[89]

---

[86] Doc. 44 ¶ 15.

[87] *See* Doc. 35 at 6 ("An alleged harm related to the failure to follow IME procedures set forth in Section 1796 could be remedied by existing causes of action, such as breach of contract.")

[88] *See* Doc. 37 at 14-15 (asserting that Nationwide told Benscoter that his policy required him to do so); Doc. 43 at 3. Nationwide argues, correctly, that Benscoter cannot rely on his attorney's affidavit to support his motion for summary judgment. *Id.* at 43 at 3-4. However, the Court need not rely on the affidavit for the relevant facts here as it merely refers to the claims log Nationwide itself cites. *See* Doc. 36-3 at 2.

[89] Doc. 36-3 at 85.

Nationwide attempts to contrast this case with the underlying facts in *Sayles*, where the plaintiffs were denied benefits after they refused to attend an IME.[90] Nationwide asserts that Benscoter is not compelled to attend an IME until Benscoter refuses or fails to attend an IME and benefits are discontinued.[91] This argument—that an insured is not compelled to attend an IME unless they do not actually attend the IME—is untenable. The adjuster's notes state that Nationwide was requesting Benscoter attend an IME as "part of his policy agreement."[92]

The question then is which part of the policy agreement. Benscoter's position is that it must have been the IME provision which provides, as part of the insured's duties, that "[i]njured persons must submit to examinations by company-selected physicians as often as the company reasonably requires."[93] A reasonable juror could conclude that a contractual provision that an insured *must* submit to an IME is sufficient to compel an insured to attend the IME.

Conversely, Benscoter's policy also provides that an insured is only entitled to medical benefits beyond eighteen months if "it is determined with reasonable medical probability that further expenses may be incurred as a result of the injury."[94] At the time Nationwide requested the IME, Benscoter was not entitled to continued

---

90   Doc. 43 at 2-3.
91   *Id.* at 5-6.
92   Doc. 36-3 at 85.
93   *Id.* at 23, 32 ¶ 1(h).
94   *Id.* at 19.

benefits unless it was determined he was had not yet recovered from his accident. Among the ways this requirement could be fulfilled is via a voluntary IME, a possibility acknowledged by the court in *Sayles*.[95] Though Benscoter attaches an affidavit to his reply asserting that he would not have attended the IME if Nationwide "had been honest and relayed Section 1796 specified a procedure that Nationwide had to follow in order to force [Benscoter] to attend the exam,"[96] this is insufficient to support summary judgment at this stage.[97]

### 2.    Causation.

The gravamen of Benscoter's claims is that because the IME was improperly procured, the IME is void as a matter of law and Nationwide's denial of benefits based on that IME is improper.[98] Benscoter does not allege, nor does he supply any facts showing that the IME findings are actually incorrect. Nationwide maintains that, even if it did miss a "procedural hoop," this does not change the fact that Benscoter is not entitled to continued benefits.[99]

---

[95] *See Sayles*, 219 A.3d at 1124 (observing that Section 1796 sets forth requirements insurers must follow "to compel their insured to submit to an IME when the insured does not voluntarily comply with the insurer's request to do so").

[96] Doc. 46 ¶ 6.

[97] *See Metro Container Group v. AC&T Co., Inc.*, 2023 WL 2955888, at *2 (E.D. Pa. Apr. 14, 2023) (observing that summary judgment is premature "[w]here discovery relevant to a particular issue has not been completed" or "where critical witnesses have not yet been deposed") (citing *Sames v. Gable,* 732 F.2d 49, 51-52 (3d Cir. 1984); *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3d Cir. 1992)).

[98] *See* Am. Compl. ¶ 54 ("Because Nationwide's conduct to require an exam illegally based on an illegal policy provision was unlawful, and was not done in accordance with law and the lawfully required procedure, the exam Nationwide derived from that conduct is null, void, invalid, and illegal.").

[99] Doc. 43 at 16.

In support of his argument that the IME is void as a matter of law, Benscoter relies on *Thompson v. Workers' Compensation Appeal Board (Exelon Corp.)*, in which a workers compensation claimant challenged the revocation of benefits based on an Impairment Rating Evaluation.[100] Observing that an earlier decision by the Pennsylvania Supreme Court "essentially struck the entire IRE process from the [Worker's Compensation] Act" and "no other provision of the Act allows for modification of benefits based on an IRE," the *Thompson* court ordered the claimant's benefits reinstated.[101] Benscoter suggests that the *Sayles* decision had the same effect and that he is similarly entitled to the reinstatement of his benefits. However, the *Sayles* decision did not prohibit the use of IMEs, even absent a court order, to determine what, if any, medical benefits are due to an insured.[102] The Court therefore cannot conclude that the IME is void as a matter of law and must deny Benscoter's motion for summary judgment as to Count IV.

Despite this and Benscoter's failure to allege that the IME's findings are incorrect or otherwise unreliable, the record suggests that Benscoter may have been denied benefits he was entitled to. In February 2020, Nationwide advised Benscoter

---

[100]  168 A.3d 408, 410 (Pa. Commw. 2017).

[101]  *Id.* at 413.

[102]  *See* R&R Den. Class Certification, *Sayles v. Allstate Ins. Co.*, No. 3:16-cv-1534, 19 n.5 (M.D. Pa. Oct. 19, 2022) (observing, on remand, the possibility some claimants in the proposed class "were properly denied benefits" because of an IME).

that it would no longer cover his PM&R[103] treatment due to the IME but that it may consider "referrals for different type[s] of [treatment]."[104] Nationwide subsequently offered to review bills for later treatments and evaluate whether they fell within the scope of the IME.[105] Though the Court cannot "ignore the possibility (perhaps likelihood) that [Benscoter's] injuries in fact no longer warranted payment of medical benefits," it also cannot ignore the possibility that they did.[106] Nationwide's statements to Benscoter suggest that the IME did not completely foreclose the availability of future benefits, and the record is insufficient to permit the Court to evaluate what, if any, treatments Benscoter received that may have been outside the scope of the IME.

Therefore, the Court denies Nationwide's motion as to Benscoter's breach of contract claim and permits Benscoter to seek leave to amend regarding that claim.[107] The Court notes that Benscoter has already amended his complaint once and failed to allege facts demonstrating that he was improperly denied benefits, despite Nationwide raising this issue in its motion to dismiss the initial complaint,[108] which

---

[103]  The Court assumes PM&R treatment to mean Physical Medicine and Rehabilitation treatment. *See* Doc. 36-3 at 31.
[104]  *Id.* at 79.
[105]  *See id.* at 27, 29, 33.
[106]  *Cf.* Doc. 30 at 14.
[107]  *See TFB Midatlandic 4, LLC v. Local Car Wash, Inc.*, 2023 WL 4138259, *2 (M.D. Pa. June 222, 2023) (denying partial motion for summary judgment and permitting non-movant to seek leave to amend).
[108]  *See* Doc. 25 at 12-15.

would ordinarily militate in favor of granting summary judgment.[109] However, the Court is also mindful that Benscoter instead relied on the position that the IME was void as a matter of law, which would have likely been sufficient to overcome Nationwide's arguments.

Given the Third Circuit's liberal policy of allowing amendments to ensure claims are resolved on their merits, the Court will allow Benscoter, now armed with the Court's ruling clarifying the issues of the case, the opportunity to amend his pleadings.[110]

### C.    Bad Faith

Nationwide moves for summary judgment on Benscoter's bad faith claims arguing that they are time-barred by the statute of limitations which began to run when Nationwide first informed Benscoter it would no longer pay benefits in December 2019.[111] Benscoter argues in response that Nationwide's denial of benefits

---

[109] *See Long v. Bristol Tp.*, 2012 WL 3517347, *3 n.4 (E.D.Pa. Aug. 14, 2012) ("The Third Circuit has previously recognized that 'a District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.'") (quoting *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654 (3d Cir. 1998)).

[110] The denial of Nationwide's Motion as to Count IV is without prejudice to Nationwide's right to bring a subsequent motion to dismiss or for summary judgment following an amendment by Benscoter.
The Court will not require Benscoter to seek leave to file an amended pleading; he is advised that any amended pleading should otherwise comply with Local Rule 15.1. In particular, Benscoter is reminded that any amended pleading shall be filed with "a copy of the original pleading in which stricken material has been lined through and any new material has been inserted and underlined or set forth in bold-faced type." LR 15.1(b). Benscoter should also take care to ensure that any amended pleading is free of needlessly duplicative statements. *See, e.g.*, Am. Compl. ¶¶ 54, 119, 140, and 143.

[111] Doc. 30 at 16-17.

is an ongoing course of conduct that continued until October 2021 and that the statute of limitations may be tolled by Nationwide's misrepresentations.[112]

"Statute[s] of limitations begin to run when the cause of action accrues."[113] For a claim of bad faith under 42 Pa. C.S. § 8371, that is "when the refusal to pay first occurred."[114] At the latest, this is January 10, 2020.[115] Though the statute of limitations may be tolled "where a defendant 'causes the plaintiff to relax vigilance or deviate from the right of inquiry' concerning the cause of an injury," that is not the case here.[116] Not only was Benscoter aware of the facts of his injury in January 2020, he retained counsel in the Spring of 2020, which is antithetical to a claim that Nationwide caused him to relax vigilance or deviate from the right of inquiry.[117]

Even if Benscoter's bad faith claim was timely, it would still fail. "Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law."[118] Prior to *Sayles*, it was unsettled whether IME provisions such as the one in Benscoter's policy were void as a matter of law.[119] The reasonableness of Nationwide's position that it could rely

---

[112] Doc. 34 at 18-20.

[113] *Dubose v. Quinlan*, 643 173 A.3d 634, 643 (Pa. 2017).

[114] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005) (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999).

[115] Doc. 36-3 at 81.

[116] *Bariski v. Reassure America Life Ins. Co.*, 832 F.Supp.2d 233, 239 (M.D. Pa. 2011).

[117] Doc. 36-3 at 78.

[118] *Loughery v. Mid-Century Ins. Co.*, 2022 WL 17821613, at *3 (W.D. Pa. Dec. 20, 2022) (quoting *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).

[119] *Id.*

on the IME provision despite Section 1796 is highlighted by the Third Circuit taking the step to certify the question to the Pennsylvania Supreme Court.[120] Even though Nationwide's position was later found to be incorrect, reliance on that position was not unreasonable and is insufficient to support a claim for bad faith.[121]

Because Benscoter did not file suit until June 17, 2022, more than two years after the statute of limitations began to run on a potential claim of bad faith, the Court grants Nationwide's Motion as to Count V.

## V.    CONCLUSION

For the reasons stated, the Court grants Nationwide's motion in part and denies Benscoter's motion in its entirety.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[120] *Id.* (citing *Sayles v. Allstate Ins. Co.*, 2019 WL 11317938 (3d Cir. Dec. 27, 2019).
[121] *Id.*